# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No.   3:15-CR-154 |
| v. ) | |
| ) | JUDGES REEVES / GUYTON |
| GEORGE MARCUS HALL ) | |
| ) | |

## UNITED STATES' POST HEARING BRIEF

The United States of America, by and through Nancy Stallard Harr, Acting United States Attorney for the Eastern District of Tennessee, hereby moves this Court to accept this post hearing brief in order to make a legal finding as to whether the Supremacy Clause should apply to all property forfeited to the United States and, if so, whether a local taxing authority is entitled to seek an alternative remedy, such as seeking a delay in the entry of a final order of forfeiture, in order to recoup taxes it is prohibited from assessing. The United States respectfully asks the Court to find that the Supremacy Clause does apply to all property forfeited to the United States and further that there is no alternative remedy that a local taxing authority can demand in order to assess taxes upon property of the United States and that Knox County has no due process right to seek one.

### I.    FACTS

The United States relies on the facts of the case as laid out in its previous filing. (Doc. 49, Response in Opposition.) On April 27, 2016, this Court held a hearing on Knox County's Objection to Forfeiture [Doc. 47], the United States' response [Doc. 49] and Knox County's reply [Doc. 61]. Knox County's Objection centered on the type of notice received by the County. (Doc. 47, Objection, pg. 3.) Knox County objected to the form of notice of forfeiture that the Knox County Law Director received, arguing that the United States should have effected

notice to the County by serving the Knox County Mayor personally and also raising due process concerns over any lack of notice and involvement in forfeiture proceedings. (*Id.* at pg. 2-3.) The United States responded in opposition and further requested a hearing, arguing that, to the extent Knox County is entitled to any notice, the notice it received in this case was sufficient. (Doc. 49, Response in Opposition.) Knox County replied, arguing against a hearing and requesting the Court to demand that the United States effect direct, personal service of the notice of forfeiture proceedings on Knox County Mayor, Tim Burchett. (Doc. 61, Reply, pg. 4-7.)

The Court held a hearing on April 27, 2016. The United States argued that notice was sufficient, and even if notice was not hand-delivered to the Knox County Mayor himself, Knox County is still getting what they are entitled to received. Knox County raised issues concerning the application of the Supremacy Clause to property forfeited to the United States and further discussed possible alternatives Knox County wishes to seek in order to continue to assess taxes against federally forfeited property. After conceding that the Supremacy Clause applies to property forfeited to the United States, Knox County contended that, if they receive notice in the manner they demand, they could seek a stay of the final order of forfeiture so that Knox County could accrue taxes.[1] Because there was new argument, the United States files this post hearing brief and requests the Court to issue an order that concludes that Knox County has no legal basis to delay the final order of forfeiture to generate tax revenue.

---

[1] Knox County appears to acknowledge, at least in part, that the county has no legal right to demand taxes be assessed on property of the United States. However, Knox County also asserts that they will withhold agreements with the United States on other issues, provided the United States complies with their demands regarding forfeiture. (Doc. 61, Reply, pg. 10.) Surely, Knox County is not attempting to obstruct the forfeiture process in order to get a more favorable settlement from the United States. In any event, such a strategy must fail.

2

## II. ARGUMENT

**The Supremacy Clause denies Knox County any due process right to delay the entry of a final order of forfeiture so that Knox County can generate tax revenue.**

Federal asset forfeiture laws serve to take the profit out of crime and give back to communities. To fight crime effectively, law enforcement must not only arrest and punish the wrongdoer, but must also remove the tools of the crime from circulation so they cannot be reused, either by the wrongdoer when he is released, or others. In addition to removing the instrumentalities of crime from general circulation, asset forfeiture also deprives a wrongdoer of the fruits of his illegal act, and thus diminishes the incentive to engage in economic crimes. Without such asset forfeiture provisions, "convicting the defendant but leaving him in possession of the riches of wrongdoing gives others the impression that a life of crime is worth the risk." STEFAN CASSELLA, ASSET FORFEITURE IN THE UNITED STATES § 1-2 (2d. ed. 2013).[2]

Perhaps most importantly, in cases involving innocent victims, asset forfeiture serves as a powerful and effective tool in recovering assets that may be used to compensate the victims for their losses. In fact, restoring property to victims in economic cases is the first priority for law enforcement when it comes to the disbursement of forfeited property. *See* 18 U.S.C. § 981(e)(6) (authorizing United States, in civil forfeiture cases, to use forfeited property to pay restitution to the victims of the underlying crime); 21 U.S.C. § 853(i) (same for criminal forfeiture cases). In sum, depriving a criminal of the spoils of his crime "not only ensures that the criminal enterprise

---

[2] Notably, federally forfeited funds are also used to support local law enforcement capabilities through the program of equitable sharing which allows the United States to divert federally forfeited funds to agencies that participated in the investigation. *See, e.g.*, 21 U.S.C. § 881(e); 26 C.F.R. § 301.7624-1. The funds that the agencies receive can be used for certain specified law enforcement purposes. *See id*. Thus, forfeiture serves to help communities by using criminally derived proceeds and facilitating property (rather than, say, taxes) to strengthen law enforcement's abilities to combat crime.

3

is deprived of its economic resources, and not only makes funds available for restitution to the victims, it also sends a signal to the community that the benefits of a life of crime are illusory and temporal at best." STEFAN CASSELLA, ASSET FORFEITURE IN THE UNITED STATES §1-2 (2d. ed. 2013) (citation omitted).

The United States cannot effect these purposes without first obtaining clear title to forfeited property. Knox County suggested that this Court could delay entry of the final order of forfeiture until the sale of the real property, at which point, Knox County could recoup the taxes up until the date of sale. As this Court suggested at the hearing, such a result is impractical. The United States cannot pass good title to property it does not own.[3] The United States does not have title until the entry of a final order of forfeiture. *See* 21 U.S.C. § 853(n)(7) and Fed. R. Crim. P. 32.2. Knox County cannot obstruct entry of a final order of forfeiture for the sole purpose of generating additional tax revenue. Such a result would not only thwart the purpose of federal forfeiture laws, but would also fly in the face of the Supremacy Clause.

It is well-settled that the United States Constitution forbids state and local authorities from imposing taxes on property owned by the federal government. *See* U.S. Const. art. VI, § 2, Supremacy Clause; Tenn. Code Ann. § 67-5-203; *e.g.*, *United States v. County of Fresno*, 429 U.S. 452 (1977); *United States v. Mayo*, 319 U.S. 441, 447 (1943). The property's exempt status occurs by operation of law; once the property belongs to the United States, it is exempt from local taxation.

---

[3] When the circumstances allow (such as to preserve equity in the property, the property is ripe for sale or other good cause), the Court may, upon motion of a party, order the interlocutory sale of the property any time before the final order of forfeiture. Fed. R. Crim. P. 32.2(b)(7) (incorporating Fed. R. Civ. P. G(7)(b)). This is discretionary and typically achieved through joint motions. The United States does often suggest and move for such sales, in appropriate circumstances.

4

Case 3:15-cr-00154-PLR-HBG   Document 77   Filed 05/11/16   Page 4 of 8   PageID #: 704

When the United States obtains a final order of forfeiture with respect to a piece of real property, title to the real property passes to the United States. 21 U.S.C. § 853(n)(7) (mandating that after the dispositions of any petitions during the ancillary proceedings, "the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee"); Fed. R. Crim. P. 32.2(b), advisory committee note (explaining that if there are no claims, or the United States prevails against claimants, when an order of forfeiture becomes final, "the United States is deemed to have clear title to the property") (citations omitted). In other words, property that has been forfeited to the United States belongs to the United States upon entry of a final order of forfeiture. Accordingly, the property is exempt from local taxation at the point a final order of forfeiture is entered.

Knox County conceded this legal conclusion at the April 27, 2016 hearing and argued for the creation of a prejudgment procedure (such as delaying entry of a final order of forfeiture until the date of the sale of the real property) to protect potential post-judgment loss in tax revenue, or perhaps, more accurately, to protect a future interest it may have in racking up tax revenue during the span of time between entry of the final order of forfeiture and the date of the sale of the forfeited real property. Knox County, just as other claimants, have no right to demand or seek payment for a future interest. Just as a bank may not seek to delay entry of a final order of forfeiture so that it can tally up additional interest and penalties, Knox County cannot obstruct entry of a final order of forfeiture just so it can generate more tax revenue. Rather, a successful claimant must have a present and enforceable legal interest that was in existence at the time of the offense giving rise to the forfeiture. *See* 21 U.S.C. 853(n)(6) (explaining that a successful petitioner will have shown that the petitioner's interest was *vested in petitioner* rather than defendant or was superior to any right, title, or interest of the defendant *at the time of the*

5

*commission of the acts* which gave rise to the forfeiture . . .") Because, Knox County does not have a vested interest in taxes not yet accrued or unpaid, Knox County has no due process right to demand a procedure to protect that future interest.

Due process analysis centers on two separate issues: 1. Whether process is due; and 2. If process is due, what is the process that must be followed? *Specifying the Procedures Required by Due Process: Toward Limits on the Use of Interest Balancing*, 88 Harv L. Rev. 1510 (1975) (citations omitted); s*ee Board of Regents v. Roth*, 408 U.S. 564 (1972). In order for an individual or entity to be entitled to due process, there must be a strengthen deprivation of a legal right. *See Roth*, 408 U.S. at 570-71 (explaining that "to determine whether due process requirements apply in the first place, [the Court] must look not to the 'weight' but to the *nature* of the interest at stake . . . [The Court] must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property").

Traditional notions of due process apply only where there is a deprivation of a legal right. Without that, due process concerns are not implicated. *See Roth*, 408 U.S. at 571. The constitutional right to due process "is not a technical conception with a fixed content unrelated to time, place and circumstances" . . . but "calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). The Supreme Court has explained that "[t]he essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (1999)).

Here, Knox County is not being deprived of anything to which they have a legal right because they do not have a legal right to tax property owned by the United States. Knox County

is entitled to the present value of its own lien interest at the time of the entry of a final order of forfeiture, nothing more.[4] Knox County, by operation of law, is entitled to collect the value of its lien –the accrued taxes and interest of real property prior to the issuance of the final order of forfeiture.

Knox County's argument that due process entitles it to argue in every forfeiture case that the Court should stay the federal government's acquisition of title to real property by operation of federal forfeiture laws, so that the County can accrue additional property taxes, is a transparent effort to achieve an end-run around the Supremacy Clause. Accordingly, Knox County's argument should fail. In short, the Supremacy Clause dictates that the entry of a final order of forfeiture vesting title to real property in the United States cannot be delayed for the benefit of a subordinate sovereign- the Knox County government.

### III.     CONCLUSION

For the reasons stated above, the United States moves the Court to make a legal finding that there is no legal or equitable basis to provide Knox County with a due process right to

---

[4] At the hearing and in its briefing, Knox County appears to also argue that it is an "innocent owner" and should be entitled to put the United States to its proof. (*See* Doc. 61, Reply, pg. 2.). This argument is misplaced. In the ancillary proceeding of a criminal forfeiture case, the claimant can only assert his ownership interest in the property; he cannot litigate the forfeitability of the property as that has already been determined in the Agreed Preliminary Order of Forfeiture. *E.g.*, Fed. R. Crim. P. 32.2(b), advisory committee's note (explaining that the ancillary proceeding "does not involve relitigation of the forfeitability of the property; its only purpose is to determine whether any third party has a legal interest in the forfeited property"); *United States v. Oregon*, 671 F.3d 484, 492, n. 12 (4th Cir. 2012) (finding that the ancillary proceeding is not about addressing procedural errors in the forfeiture process, but only with whether the claimant has a legal interest that is superior to the United States' interest in the forfeited property); *United States v. Andrews*, 530 F.3d 1232, 1237 (10th Cir. 2008); *United States v. Carrie*, 206 Fed. App'x 920, 924 (11th Cir. 2006) (explaining that claimant lacked standing to argue the constitutionality of the forfeiture of a liquor license because it violated the State's right to regulate alcohol).

challenge the application and extent of the Supremacy Clause to property forfeited to the United States, including seeking a means to delay the entry of a final order of forfeiture in order to allow Knox County to accrue additional taxes against real property.

Respectfully submitted,

NANCY STALLARD HARR
ACTING UNITED STATES ATTORNEY

By:  *s/Anne-Marie Svolto*
ANNE-MARIE SVOLTO, BPR# 025716
Assistant United States Attorney
800 Market Street, Suite 211
Knoxville, TN 37902
(865) 545-4167

## CERTIFICATE OF SERVICE

I hereby certify that May 11, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

*s/Anne-Marie Svolto*
ANNE-MARIE SVOLTO
Assistant United States Attorney