UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | No. | 3:15-CR-154 |
| v. | ) | | |
| | ) | | |
| GEORGE MARCUS HALL | ) | | |

**OBJECTIONS TO REPORT AND RECOMMENDATION**

COMES Knox County, Tennessee, by and through the undersigned counsel, pursuant to Fed. R. Civ. P. 72, and objects to the Report and Recommendation, [Doc. 100], filed by the Magistrate Judge on June 28, 2016. Knox County would show the court as follows:

**INTRODUCTION**

This matter is before the Court on Knox County's Objection to Forfeiture without Notice to Potential Claimant Knox County, Tennessee, [Doc. 47] (the "Objection to Forfeiture"). The Court referred, [Doc. 50], the Objection to Forfeiture to Magistrate Judge on April 14, 2016. The essence of Knox County's Objection to Forfeiture is that the United States Attorney failed to provide proper direct written notice of forfeiture to the Knox County Mayor as required by 21 U.S.C. §853, Fed. R. Crim. P. 32.2, and Fed. R. Civ. P., Supp. R. G. The Magistrate Judge initially heard this matter on April 27, 2016. However, on May 11, 2016, the United States filed a post-hearing brief. [Doc. 77]. On the same day, the Magistrate Judge accepted the post-hearing brief and directed Knox County to file a response. [Doc. 78]. Knox County also field a Verified Claim and Petition for Hearing on May 11, 2016. [Doc. 79]. Knox County responded to the United States' post-hearing brief on May 25, 2016. [Doc. 85]. The Magistrate Judge issued his Report and Recommendation on June 28, 2016, recommending that Knox County's Objection to

Forfeiture be denied and Knox County's Verified Claim and Petition for Hearing be denied as untimely and moot. [Doc. 100, ID# 866]. Knox County hereby objects.

## SPECIFIC OBJECTIONS

Knox County respectfully objects to Magistrate Judge Guyton's Report and Recommendation, [Doc. 100], on the following grounds:

**A. The Report and Recommendation misconstrues the notice requirements set out in 21 U.S.C. §853, Fed. R. Crim. P. 32.2, and Fed. R. Civ. P., Supp. R. G.**

The Report and Recommendation frames the issue of notice by concluding that "the Court need not wade into the fray with regard to *whether* the United States must provide notice of forfeiture to tax lienholders, because here the Government did provide notice." [Doc. 100, ID# 871] (emphasis original).[1] The Magistrate bases his conclusion on the observation that "the Government sent, by certified mail, a Notice of Forfeiture to the Knox County Law Director as well as two attorneys in the Law Director's office."[2] [Doc. 100, ID# 871-72] (internal citations omitted). The Magistrate Judge then reverses course, finding that Knox County's objection is without merit *not* because the United States *sent* notice, but because "[a] potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's *failure to send the required notice*." [Doc. 100, ID# 872] (emphasis added).

---

[1] Knox County was only recently made aware of recently updated policies of the Department of justice now providing that direct notice should be provides to state and local taxing authorities who hold valid liens. *See*, *Asset Forfeiture Policy Manual* (2016), Ch. 13, available at https://www.justice.gov/criminal-afmls/file/839521/download.

[2] Douglas Gordon, who is listed in the referenced exhibits as an attorney in the Law Director's office, is an attorney for the City of Knoxville.

Additionally, the Magistrate found that direct notice of forfeiture to "counsel for Knox County was sufficient under Supplemental Rule G(4)(b)(iii)(B)." [Doc. 100, ID#782-83]. The basis for this conclusion deserves some emphasis. Supplemental Rule G(4)(b)(iii)(B) authorizes the government to send notice of forfeiture "to an attorney *representing the potential claimant with respect to the seizure of the property or in a related investigation, administrative forfeiture proceeding, or criminal case.*" (emphasis added). The Magistrate's conclusion, however, relies on the finding that "the United States' reasonably concluded that the Knox County Law Director's Office represented Knox County with regard to *any third-party interest* (i.e. its tax lien) in the instant Knox County Properties because the same counsel represent Knox County with respect to *the same type of third party interest* as to real property in the Selby Lane case." [Doc. 100, ID#873] (emphasis added).

Respectfully, the Magistrate's Report and Recommendation misconstrues the notice requirements set out in 21 U.S.C. §853, Fed. R. Crim. P. 32.2, and Fed. R. Civ. P., Supp. R. G. Criminal forfeiture of real property requires the government to "provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture." 21 U.S.C. §853(n)(1). Fed. R. Crim. P. 32.2(b)(6)(A) provides that "the government must publish notice of the order [of forfeiture] and send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding." As noted in the Magistrate's report:

> Rule 32.2(b)(6)(D) permits the government to give notice as provided in Supplemental Rule G(4)(B)(iii)-(v) of the Federal Rules of Civil Procedure. Supplemental Rule G(4)(b)(i) states that the government is required to provide direct notice of forfeiture proceedings to "any person who reasonably appears to be a potential claimant on the facts known to the government[.]" "The notice must be sent by means reasonably calculated to reach the potential claimant. Rule G(4)(b)(iii)(A). "Notice may be sent to the potential claimant or to the attorney representing the potential claimant with respect to the seizure of the property or in

a related investigation, administrative forfeiture proceeding, or criminal case." Fed R. Civ. P., Supp. R. G(4)(b)(iii)(B).

[Doc. 100, ID# 869-70].

With respect to property interests held by a county in the state of Tennessee, Tenn. Code Ann. §5-6-108 provides:

> The county mayor shall be the…general agent of the county; and, as such, the county mayor shall have power, and it shall be the county mayor's duty to:
>
> (1) Have the care and custody of all the county property, except such as is by law placed in the custody of other officers;

No law places the custody or care of county tax liens with any person other than the Knox County Mayor. More importantly, no law places care or custody of tax liens with the Knox County Law Director or establishes the Knox County Law Director as general agent for Knox County. Thus, as a matter of law, the Knox County Mayor is "the *person known to have alleged an interest in the property* that is the subject of the order of forfeiture" within the meaning of 21 U.S.C. §853(n)(1). He is also the "*person who reasonably appears to be a potential claimant*" within the meaning of Fed R. Crim. P. 32.2(b)(6)(A). Finally, the Knox County Mayor is the "*person who reasonably appears to be a potential claimant* on the facts known to the government" within the meaning of Supplemental Rule G(4)(b)(i).

Beyond the fact that Tenn. Code Ann. §5-6-108 establishes that notices of forfeiture should be sent to the Knox County Mayor as a matter of law, AUSA Svolto has been made specifically aware that the Knox County Mayor is the appropriate representative for delivery of notice in forfeiture actions. On December 12, 2014, Knox County notified AUSA Svolto that Knox County is entitled to direct notice on the Knox County Mayor. *United States v. Real Property Located at 1308 Selby Lane*, Civil Docket No. 3:10-CV-423. [Doc. 61-2, ID# 540-41]. On March 13, 2015, Knox County again notified AUSA Svolto that, "Knox County Mayor Tim Burchett is the chief

executive officer of Knox County and was readily identifiable as the proper person to receive notice on behalf of Knox County..." [Doc. 61-3, ID# 558-59]. Under these circumstances, it is per se unreasonable for the United States to attempt to rely on notice to the Knox County Law Director's Office. The Magistrate failed to account for this fact when he found that the United States Attorney acted reasonably based on knowledge available to her, [Doc. 100, ID# 873], in sending notices to the Knox County law Director instead of the Knox County Mayor.

It is telling, and perhaps in view of the forgoing, that the Magistrate to initially found "the Government's second argument [concerning actual notice] to be the more persuasive." [Doc. 100, ID# 872]. Inexplicably, however, the Magistrate goes on to find that notice to "counsel for Knox County was sufficient under Supplemental Rule G(4)(b)(iii)(B)." [Doc. 100, ID#782-83]. As discussed above, the rule authorizes the government to send notice of forfeiture "to an attorney *representing the potential claimant with respect to the seizure of the property or in a related investigation, administrative forfeiture proceeding, or criminal case*." Fed. R. Crim. P., Supp. R. G(4)(b)(iii)(B) (emphasis added). By resort to generalities and without discussion of the plain language of the rule, the Magistrate found

> [T]hat the United States' [sic] reasonably concluded that the Knox County Law Director's Office represented Knox County with regard to *any third-party interest* (i.e. its tax lien) in the instant Knox County properties because the same counsel represent Knox County with respect to the same *type of third party interest* as to real property forfeited in a criminal case in the Selby Lane case."

[Doc. 100, ID# 873] (emphasis added).

In addition to being contrary to the plain language of Fed. R. Crim. P., Supp. R. G(4)(b)(iii)(B), the Magistrate's decision violates well-settled cannons of statutory construction. First, "[o]ne of the most basic canons of statutory interpretation is that a more specific provision takes precedence over a more general one." *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 450 (6th

Cir. 2007), *quoting*, *United States v. Perry*, 360 F.3d 519, 535 (6th Cir. 2004). It is inappropriate, by reference to general principles of due process or the general language of notice statutes, to expand the specific language of Supplemental Rule G(4)(b)(iii)(B) to include an attorney who may "represent the potential claimant with regard to any third-party interest" or "with respect to the same type of third party interest" in an unrelated case.

Second, "[i]t is a well-settled principle of statutory construction that a court should avoid interpreting a statute so as to make portions of it superfluous." The Magistrate's construction of Supplemental Rule G renders the language of subparagraph (4)(b)(iii)(B) meaningless. If sending a notice of forfeiture to counsel representing a potential claimant with respect to another third party interest an unrelated case constitutes direct notice under subparagraph (4)(b)(iii)(B), the United States is forever excused from determining whether the "attorney [is] representing the potential claimant with respect to the seizure of the property or in a related investigation, administrative forfeiture proceeding, or criminal case." Fed. R. Crim. P., Supp. R. G(4)(b)(iii)(B). The Advisory Committee notes for subparagraph (iii) confirm that sending the initial notice of forfeiture to the Knox County Law Director is inappropriate in forfeiture cases. The note provides:

> The government's interest in choosing a means likely to accomplish actual notice is bolstered by its desire to avoid post-forfeiture challenges based on arguments that a different method would have been more likely to accomplish actual notice…
>
> Notice may be directed to a potential claimant through counsel, but <u>*only* to counsel *already representing*</u> the claimant with respect to the seizure of the property, or in a related investigation, administrative forfeiture proceeding, or criminal case.

Advisory Committee Notes for Rule G(4)(b)(iii) (emphasis supplied). Because no notice had yet been sent, the Knox County Law Director did not and, indeed, could not have represented the Knox County Mayor with respect to the seizure of the property in this forfeiture, or in any related

investigation, administrative forfeiture proceeding, or criminal case when the United States sent certified mail to the Law Director's Office.

Finally, "[s]tatutes are considered to be *in pari materia* when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object. Obviously, language is *in pari materia* when in the very same statute in paragraphs placed next to each other." *United States v. Graham*, 622 F.3d 445, 466 (6th Cir. 2010). For the purposes of the instant forfeiture, 21 U.S.C. §853, Fed. R. Crim. P. 32.2, Fed. R. Civ. P., Supp. R. G., and Tenn. Code Ann. §5-6-108 should be read *in pari materia*. 21 U.S.C. §853(n)(1) requires the United States to "provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture." Fed. R. Crim. P. 32.2(b)(6)(A) provides that "the government must publish notice of the order [of forfeiture] and send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding." As quoted extensively above, Supplemental Rule G(4)(b)(iii)(B) clearly distinguishes between "the potential claimant" and "the attorney representing the potential claimant…" Thus, even if we are to grant that "'Knox County,' *not* the Knox County Mayor, has a tax lien on the properties located in Knox County", [Doc. 100, ID# 873, note 5], this Court should not adopt a construction that the Knox County Law Director is the "person" entitled to notice. This is especially so when Tenn. Code Ann. §5-6-108 establishes that the Knox County Mayor, *not* the Knox County Law Director, is both the "general agent of the county" and the person who has "care and custody of all the county property."[3]

---

[3] In addition to the Mayor and Law Director, Knox County has an elected eleven-member County Commission, a Property Assessor, County Clerk, Register of Deeds, Trustee, Sheriff, Clerk of Circuit Court, District Attorney General, Clerk of Criminal Court, and Public Defender. If this Court adopts the Report and Recommendation it will leave open the question of whether Knox County could be charged with notice in forfeiture cases if notice is sent to any one of these

**B. The Report and Recommendation improperly finds that Knox County's Verified Claim and Petition for Hearing, [Doc. 79], is untimely.**

The magistrate recommends that "Knox County's Verified Claim and Petition for a Hearing [Doc. 79] be denied as untimely and that its request for an extension of the thirty-day period for filing its petition also be denied." [Doc. 100, ID# 878]. Knox County objects to this recommendation insofar as it rests on the premise that "Knox County received direct notice from the United States of the Agreed Preliminary Order of Forfeiture on March 4 and 7, 2016." [Doc. 100, ID# 874]. Any recommendation based on this premise begs the question of whether certified mail to an officer of the local county government other than the mayor can trigger the thirty-day time period for filing a clam under 21 U.S.C. §835(n). For the reasons stated in part A above, mail sent to the Knox County Law Director does not constitute direct or actual notice of forfeiture to Knox County and, therefore, Knox County's Verified Claim, [Doc. 79], should be accepted as timely.

Knox County also objects to the report and recommendation because it misconstrues the relevant factors to be analyzed by the Court in considering Knox County's request for an extension of time. When considering a request for an extension of time pursuant to Fed. R. Crim. P. 45(b)(1)(B), the court must consider the following factors: (1) "the danger of prejudice to the non-moving party," (2) "the length of delay and its impact on judicial proceedings," (3) "the reason for the delay, including whether it was in the reasonable control of the movant," and (4) "whether the movant acted in good faith." *Pioneer Inv. Serv. v. Brunswick Assoc. Ltd. P'Ship*, 507 U.S. 380, 395 (1993).

---

officials. Moreover, Knox County should be entitled to rely on Tenn. Code Ann. §5-6-108 to establish internal procedures for receiving notices in forfeitures and other matters.

The first factor requires a showing of prejudice to the non-moving party. According to the Magistrate, "both parties would be harmed by Knox County's late-filing of its petition because they would incur unnecessary litigation costs." [Doc. 100, ID# 876]. Knox County objects to the Magistrate's consideration of litigation costs as a "prejudice" and his characterization of these costs as unnecessary. "[T]he proper inquiry is the potential prejudice stemming from having to *retry the case* after a delay, rather than merely from having to respond to a belated motion." *United States v. Munoz*, 605 F.3d 359, 371, note 6 (6th Cir. 2010). The costs involved in responding to Knox County's claim would have been incurred if Knox County had filed a claim within the deadline argued by the government. These costs cannot constitute a "prejudice" attributable to any delay occasioned by an extension of time. *See*, *United States v. Cates*, 716 F.3d 445, 449-50, note 3 (7th Cir. 2013) (holding that "unanticipated briefing" and travel expenses do not constitute harm to the government). As applied to the present case, the additional expense of having to respond to a late-filed claim by itself cannot constitute "prejudice."

The Magistrate's Report and Recommendation also fails to account for relevant developments in this case that support Knox County's request for an extension of time. Prior to the filing of the Magistrate's recommendation, the United States filed an Amended Agreed Preliminary Order of Forfeiture, [Doc. 97], identifying several additional parcels of real property it claims are subject to forfeiture in Knox County. Upon the filing of an amended preliminary order of forfeiture, the government must send new notices of forfeiture to potential claimants and a new thirty-day period for filing claims begins. 21 U.S.C. §853(n). Accordingly, United States filed a Notice of Forfeiture, [Doc. 103], on July 8, 2016. Knox County, in turn, filed a second

Verified Claim and Request for Hearing, [Doc. 104], on July 12, 2016.[4] Under 21 U.S.C. §853(n)(2), Knox County is entitled to a hearing on its second claim. Moreover, a final order of forfeiture cannot be entered prior to disposing of "all petitions." 21 U.S.C. §853(n)(7). Because Knox County has also filed a Motion for Consolidated Hearing, [Doc. 107], on all pending motions and claims, there can be no argument that granting Knox County's request for an extension, [Doc. 61, ID# 524], or accepting Knox County's first Verified Claim, [Doc 79], will delay or impact these proceedings in the least.

Although the third and fourth *Pioneer* factors seem to be subordinate to the first two, Knox County also objects to the Magistrate's analysis on these points. Apparently, the Magistrate took a dim view of the facts, at least in part, because he speculated "that Knox County consciously chose not to file a petition…because it wanted to litigate the propriety of notice." [Doc. 100, ID# 877]. The Magistrate also observes that "the delay of the final order of forfeiture in this case will permit Knox County to maximize the taxes and interest due on the properties subject to forfeiture." [*Id.*]. As the Magistrate observed, the undersigned participated in an unrelated forfeiture case wherein undersigned "informed AUSA Svolto…that the Knox County Mayor is the appropriate recipient for notices of forfeiture." [Doc. 100, ID# 877]. In that case, the United States admitted a "pattern of practice" not to notify local tax authorities in forfeiture cases. [Doc. 61-1, ID#528]. Moreover, the United States maintained in that case, as it does here, [See e.g., Doc. 77, ID# 706-07], that Knox County is not entitled to any notice in forfeiture cases due to the United States policy to pay taxes that accrue prior to the entry of an

---

[4] On the same day, Knox County filed a Motion for Consolidated Hearing, [Doc. 107], to combine hearings on Knox County's Verified Claims, [Doc. 79 and Doc. 104], the instant Objections to Judge Guyton's Report and Recommendation, [Doc. 100], and Knox County's Motion for Interlocutory Sale, [Doc.106] so as to not delay these proceedings any further.

order of forfeiture. Notwithstanding the undersigned's specific instruction to AUSA Svolto and without any suggestion that the United States had abandoned its "pattern of practice" or its position that local tax authorities were simply not entitled to notice, the United States now attempts to rely on mail sent to the Knox County Law Director to trigger the thirty-day period to file a claim. Although accepting Knox County's first Verified Claim, [Doc. 79], will no longer cause any delay, Knox County submits that the undersigned acted in good faith and the cause for the delays perceived by the Magistrate were within the control of the United States.

### C. The Magistrate improperly finds that no controversy exists in this case.

At the April 27, 2016, hearing, the Magistrate *sua sponte* inquired whether a controversy exists in this case. This inquiry resulted in an exchange at the hearing and the filing of a Post-Hearing Brief, [Doc. 77], and a reply, [Doc. 85]. Ultimately, the Magistrate found that "no controversy exists as to Knox County's interest in the Knox County properties subject to forfeiture in this case…[and recommended] denying Knox County's Verified Claim and Petition for Hearing." [Doc. 100, ID# 882].

Knox County objects to the findings part C of the Magistrate's Report and Recommendation. [Doc. 100, ID# 878-82] First, the Magistrate adopts the belief that "the Government has agreed to pay the taxes due on the Knox County properties plus interest thereon, which are owed on the date of entry of the final order of forfeiture." Doc. 100, ID# 878-79]. The grounds for this finding include the following a statement from the United States' Post-Hearing Brief:

> Knox County is entitled to the present value of its own lien interest at the time of the entry of the final order of forfeiture, nothing more. Knox County, by operation of law, is entitled to collect the value of its lien- the accrued taxes and interest of real property prior to the issuance of the final order of forfeiture.

[Doc. 77, ID# 707]. Additionally, the court relied on statements by counsel for Knox County that taxes owed on a particular date could be ascertained. [*Id.*]. These statements cannot be interpreted as an agreement of any sort.

Taken on their face the United States statement and the Magistrates belief speak only to what is owed "at the time of the entry of the final order of forfeiture." As argued in Knox County's Reply to the United States' Post-Hearing Brief, [Doc. 85], the amount of tax, interest, penalties, and other costs owed the date of entry of a final order of forfeiture would not adequately account for Knox County's interest in forfeited property. This is so even if no consideration is given to taxes accruing between the entry of a final order of forfeiture and the sale of the property. In *United States v. Real Prop. Constituting Approximately Fifty (50) Acres*, 703 F. Supp. 1306, 1313 (E.D. Tenn. 1989), this District Court held that denying a mortgage lienholder interest, attorney fees, and other charges through the date of payment would result in a diminution of the lienholders' interest contrary to asset forfeiture law. Citing, *United States v. Metmor Fin., Inc.*, 819 F.2d 446 (4th Cir. 1987), *see also*, *United States v. 1980 Lear Jet, Model 35A*, 38 F.3d 398 (9th Cir. 1994) (requiring payment of interest on statutory lien in forfeiture action).

Much like the typical unpaid mortgage, unpaid real property taxes accrue interest, penalties, and other costs until Knox County receives payment in full. See e.g., Tenn. Code Ann. §67-5-2010 and §67-5-2404. Failure to pay these amounts would clearly diminish Knox County's interest in the property in violation of 21 U.S.C. §853 and other applicable asset forfeiture laws. Thus, Knox County is at least entitled to receive interest, penalties, and other charges that accrue in addition to the "present value" of its lien interest at the time of entry of a final order of forfeiture. Nowhere in the United States' filings does it "agree" that Knox County is entitled to interest, penalties, and other costs that will accrue under state law on the amount of delinquent taxes "owed

on the date of entry of the final order of forfeiture." Knox County submits that this is evidence of a real controversy rather than another reason for denying Knox County's Verified Claim.

Second, Knox County does not concede that an order providing only for additional interest penalties, and costs on the "present value of its lien interest at the time of the entry of a final order of forfeiture" would adequately account for Knox County's right, title and interest in forfeiture properties. Knox County is a potential claimant in each case involving forfeiture of real property located in Knox County. Knox County has asserted a right to receive tax revenues, penalties, interest, and other costs accruing on the real property subject to this forfeiture case according to state law. [Doc. 61, p. 1-2]. Knox County's interest in forfeited real property consists of the right to receive annual real property tax revenues. Although Knox County's right to receive real property tax revenue is secured by a statutory lien, *see*, Tenn. Code Ann. 67-5-2101, the underlying right is vested in Knox County by act of the Tennessee legislature dating back to at least 1907. *See*, 1907 Tenn. Pub. Acts Ch. 602. Due to its status as a potential claimant, Knox County is entitled to notice and an opportunity to be heard in the forfeiture proceeding before entry of a final order of forfeiture. Beyond its status as a potential claimant, Knox County is an innocent party to the forfeiture proceeding because it does not participate in criminal wrongdoing. The importance of tax revenues to Knox County citizens—and those of other local tax authorities—cannot be disputed. These revenues are the single largest source of funds available to pay for necessary and ongoing governmental services demanded by law-abiding citizens, including but not limited to a system of free public schools, a police force, fire prevention, and the construction and maintenance of physical infrastructure such as roads and bridges.

Respectfully, the Magistrate's determinations regarding the Supremacy Clause as placing the cart before the horse. The United States may not rely on the Supremacy Clause to defeat a

potential claimant's right to a hearing in an ancillary proceeding because the Supremacy Clause simply cannot apply until a final order of forfeiture is entered. And a final order of forfeiture cannot be entered unless and until potential claimants are notified and have an opportunity to assert their interests. *See*, 21 U.S.C. §853(n). Not only is reliance on the Supremacy Clause to defeat Knox County's right to a hearing *circulus in probando*, it is an affront to the authority of this Court to enter orders which adequately account for and protect third party rights, titles, and interests.

Putting aside the availability of interlocutory sale, the final order of forfeiture in a criminal forfeiture case must account for any third-party "right, title, or interest in the property…[which] was vested in the petitioner rather than the defendant *or* was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section." 21 U.S.C. §853(n)(6)(A) (emphasis added). In *United States v. Metmor Fin., Inc.*, 819 F.2d 446 (4th Cir. 1987), the Fourth Circuit Court of Appeals held that the United States "can succeed to no greater interest in the property than that which belonged to the wrongdoer whose actions have justified the seizure." 819 F.2d at 448-49. The Court explained,

> [Defendant] Ackley purchased the property encumbered by Metmor's secured note, *with interest accruing*. His equity was subject to an obligation to repay the borrowed principal and to pay interest on the unpaid balance until all of the principal was repaid. The government now attempts to transform that note into one that is unsecured and interest free. Such a result would deprive Metmor of its stake in the forfeited property and would constitute a taking without due process.

*Id.* at 449. Metmore claimed that "the government could only legally obtain an ownership interest equivalent to that which belonged to Ackley -- i.e., a stake in property which carried a pre-existing mortgage with continually accruing interest." *Id.*

The *Metmore* Court specifically rejected the argument that continuing payments to an innocent lienholder diminished the government's interest in forfeited property "for the plain and

simple reason that the government's "interest" in the property entails an obligation to make continuing "interest" payments…" *Id.* at 450. The Court concluded that the "proper consideration is Metmore's loss, and not the government's gain." *Id.* Thus, a forfeiture proceeding cannot change the nature of an innocent third party's rights without constituting a taking under the Fifth Amendment. *Id.*, s*ubsequently aff'd*, *United States v. Fed. Nat'l Mortg. Ass'n*, 946 F.2d 264, 266 (4th Cir. 1991). Other Circuit Courts have adopted the same rule. *See*, *Ford Motor Credit Co. v. N.Y. City Police Dep't*, 503 F.3d 186, 191 (2d Cir. 2007); *United States v. Real Prop. Located at 41741 Nat'l Trails Way*, 989 F.2d 1089, 1092 (9th Cir. 1993); *United States v. Six Parcels of Real Prop. etc.*, 920 F.2d 798, 799 (11th Cir. 1991).

The nature of Knox County's vested right to receive tax revenue, and the obligation owed by defendant Hall, is analogous to the right of a mortgagee to receive interest and attorney fees that accrue between entry of a final order of forfeiture and final payment. In the instant forfeiture, Knox County's right to receive tax revenues periodically assessed against Defendant Hall's real property was superior in every way to any right, title, or interest he may have had at the time of the commission of the acts which gave rise to these proceedings. Knox County's right to receive tax revenues was created before Hall owned the properties. It cannot be disputed that defendant Hall purchased the properties subject to the requirement to pay Knox County real property taxes. Likewise, it cannot be reasonably disputed that Hall's equity in the properties was subject to an ongoing obligation to pay Knox County real property taxes according to state law. As in *Metmore*, the United States may not acquire any greater interest in the property than Hall; nor can the forfeiture result in any diminution of Knox County's rights. *Metmore*, at 449. Knox County, just as any other claimant, should be entitled to receive from the proceeds of the sale an amount equal to that it would be entitled to receive from defendant Hall had he conducted

the sale himself. Because the United States receives no greater right that which vests upon the entry of a final order of forfeiture and third party rights, titles and interests must be accounted for, it is not necessary to challenge federal sovereign immunity or to confront the Supremacy Clause in order to grant Knox County relief.[5]

The Magistrate's Report and Recommendation fails to account for Knox County's Motion for Interlocutory Sale, [Doc. 106]. Fed. R. Civ. P. G(7), as incorporated by Fed R. Crim. P. 32.2(b)(7), specifically authorizes sale prior to the entry of a final order of forfeiture when the property is subject to "taxes on which the owner is in default[.]" The Advisory Committee note to subparagraph (7)(b)(i)(C) confirms that the court is authorized

> [T]o order sale of property subject to a defaulted mortgage or to defaulted taxes. The authority is narrowly confined to mortgages and tax liens; other lien interests may be addressed, if at all, only through the general good-cause provision. The court must carefully weigh the competing interests in each case.

The sale must be "at public sale at the courthouse of the county, parish, or city in which the greater part of the property is located, or upon the premises or some parcel thereof located therein, as the court directs…[and] upon such terms and conditions as the court directs." 28 U.S.C. §2001. An

---

[5] It should be noted that Knox County does not claim that the United States is responsible to pay any amount that could accrue in excess of the proceeds of a commercially reasonable sale of the property. In forfeiture cases, all claims are satisfied out of the proceeds of the sale of the property according to their respective priorities. No funds are paid out of the United States Treasury. The United States Supreme Court has held that "tax immunity is appropriate in only one circumstance: when the levy falls on the United States itself." United States v. New Mexico, 455 U.S. 720, 735 (1982). Thus, any taxes that accrue after the entry of an appropriate final order of forfeiture that can be paid out of the proceeds of the sale of the forfeited property would not fall directly on the United States and are not bared by the Supremacy Clause. See, United States v. 1980 Lear Jet, Model 35A, 38 F.3d 398 (9th Cir. 1994) (rejecting sovereign immunity argument where no funds payable out of United States Treasury). Second, as the united States observes, [Doc. 77, p. 5] citing, 21 U.S.C. §853(n)(7), title to forfeited property does not pass to the United States until entry of the final order of forfeiture. Because Congress specifically required final orders of forfeiture to account for any rights of innocent third parties, 21 U.S.C. §853(n)(6), the provisions of such an order do not, ipso facto, violate the doctrine of sovereign immunity or the Supremacy Clause.

interlocutory sale can be scheduled upon "notice published once a week for at least four weeks prior to the sale in at least one newspaper regularly issued and of general circulation in the county, state, or judicial district of the United States wherein the realty is situated." 28 U.S.C. §2002. Because an interlocutory sale would occur prior to the entry of a final order of forfeiture, the United States' arguments regarding tax immunity under the Supremacy Clause would be irrelevant.

What has become abundantly clear in this case is that the United States Attorney for the Eastern District of Tennessee is fighting to deprive local governments of real property tax revenue in federal asset forfeiture cases involving real property. Although the expressed objectives of asset forfeiture are commendable,[6] the loss of local tax revenue is not legally or practically necessary. For most real property, forfeiture occurs through a judicial proceeding in which the government takes property from a criminal wrongdoer and then sells it to a person who will use the property for legitimate purposes. The property may be sold either before or after the entry of a final order of forfeiture. [Doc. 77, ID# 704, note 3, *citing*, Fed. R. Crim. P. 32.2(b)(7) (incorporating Fed. R. Civ. P. G(7)(b)]. If the property is sold before the entry of a final order, no loss of local tax revenue occurs. The sale proceeds are used to pay local property taxes accrued prior to sale while the purchaser pays property taxes that accrue after the sale. But when property is sold after a final order of forfeiture, the United States Attorney argues that the Supremacy Clause extinguishes the local government's right to assess and collect tax revenues until the property is sold. [Doc. 77, ID# 704-05]. The resulting "tax gap" has exceeded two years in previous forfeiture cases. The United States Attorney maintains this position even though nothing in the law of forfeiture prohibits this

---

[6] "[D]epriving a criminal of the spoils of his crime 'not only ensures that the criminal enterprise is deprived of its economic resources, and not only makes funds available for restitution to the victims, it also sends a signal to the community that the benefits of a life of crime are illusory and temporal at best.'" Doc. 77, ID# 703-04, *citing*, STEFAN CASSELLA, ASSET FORFEITURE IN THE UNITED STATES §1-2 (2nd. Ed. 2012)].

Court from entering a final order protecting local governments from this loss.[7] The truth of the matter is that the United States Attorney for the Eastern District of Tennessee chooses a posture in forfeiture cases that allows her to wield federal tax immunity as a sword against local governments.

Finally, Knox County objects to the magistrate's recommendation to the extent that it might have the result of rendering moot any future claim filed by a local tax authority. It is insisted that "the absence of an actual controversy in this case is another reason for denying Knox County's Verified Claim and Petition for Hearing." [Doc. 100, ID# 882]. The basis for this finding, according to the Magistrate, is the United States' "agreement" to pay taxes "owed on the date of entry of the final order of forfeiture." Doc. 100, ID# 878-79]. It is unclear whether the Magistrate considered the newly revised Department of Justice policy to provide notice, but it is now "Department policy that the Government pays state and local real property taxes that accrue up to the date of the entry of an order or judgment of forfeiture." *Asset Forfeiture Manual* (2016), Ch. 13, available at https://www.justice.gov/criminal-afmls/file/839521/download. If this Court adopts the Magistrate's recommendation, it would seem that future claims could be dismissed as "moot" for so long as the Department of Justice maintains a policy to pay taxes. This could prevent Knox County as well as other local tax authorities from availing themselves of their rights as parties. Not the least of which is the right to have the final order of forfeiture amended to account for their interests in the forfeiture property pursuant to 21 U.S.C. §853. In addition, after having a claim dismissed as "moot" it may be difficult for a local

---

[7] For example, the final order of forfeiture could provide that local taxes will continue to accrue against the proceeds of the sale of the property as they would against the property itself, notwithstanding the United States' claim to ownership. The order could further provide that such taxes shall be payable solely from the proceeds of the sale and not from the United States Treasury. Thus, the burden of local taxes would not fall on the United States Treasury, but the loss of tax revenue would be limited.

tax authority to avail itself of party status and move for an interlocutory sale if taxes subsequently become delinquent.

## CONCLUSION

For all of the forgoing reasons, Knox County objects to the Report and Recommendation, and requests that this Court enter an order granting Knox County's Objection to Forfeiture, [Doc. 47], and accepting Knox County's Verified Claim and Petition for Hearing, [Doc. 79].

Respectfully submitted,

s/*Daniel A. Sanders*

DANIEL A. SANDERS (BPR # 027514)
Deputy Law Director
Counsel for Knox County, Tennessee
City-County Building
400 Main Street, Ste. 612
Knoxville, TN  37902
(865) 215-2327
lawdir@knoxcounty.org

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2016, I caused the foregoing document to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to counsel of record.

/s *Daniel A. Sanders*
Daniel A. Sanders